UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTOINE LAMB, M15463, | ) |
| Petitioner, | ) |
| | ) No. 18 C 2377 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| KIM SMITH, Warden, | ) |
| Taylorville Correctional Center, | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Petitioner Antoine Lamb, currently incarcerated at Taylorville Correctional Center, is serving a seven-year sentence for aggravated criminal sexual abuse, criminal sexual assault by force, and criminal sexual assault by a person holding a position of authority. Lamb has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. Lamb raises three grounds for relief: (1) ineffective assistance of trial counsel for failing to file a motion to suppress Lamb's statements, (2) ineffective assistance of post-conviction counsel, and (3) the trial court's imposition of an indefinite mandatory supervised release ("MSR") term in violation of state sentencing guidelines and the Double Jeopardy Clause. This Court reaches Lamb's claim of ineffective assistance of trial counsel; however, Lamb has not shown that the state court's decision on this issue was contrary to or an unreasonable application of clearly established federal law. The Court finds the remainder of Lamb's claims procedurally defaulted or not cognizable on federal habeas review. Thus, the Court denies Lamb's petition for a writ of habeas corpus.

# BACKGROUND

The following facts are drawn from the state appellate court opinions on direct and post-conviction review. The Court presumes that the state court's factual determinations are correct for the purposes of habeas review because Lamb has not pointed to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The Court thus adopts the state court's recitation of the facts and begins by summarizing the facts relevant to the petition.

## I. Lamb's Trial

On April 25, 2009, Lamb, his girlfriend at the time (L.D.), the victim (S.S.), and S.S.' brothers were playing cards and drinking at L.D.'s home. At the time of the incident, S.S. was almost fifteen years old. L.D. had one glass of vodka, and Lamb drank the remainder of the bottle. Between midnight and one a.m., the game ended, and everyone dispersed. S.S. went downstairs to watch the end of a movie.

After the movie ended, S.S. went up to her room. S.S. closed the door but did not lock it. She then got into bed wearing a tank top, bra, and black track shorts. S.S.' bed had two sheets on it; S.S. only got under the first sheet. S.S. heard her bedroom door open and Lamb enter. Lamb proceeded to get into bed with S.S. Lamb asked if S.S. saw him as a father figure, to which S.S. agreed. Lamb left after fifteen to twenty minutes.

S.S. left the room thereafter, going downstairs for a brief window of time. She heard a door open and shut and returned to her room believing Lamb had gone to bed. S.S. got back in bed, under both sheets. A few moments later, Lamb reentered S.S.' room and got under both sheets. S.S. testified that Lamb began to touch her during this encounter, removing her shorts.

She said Lamb touched "her butt" and her "vaginal area." Doc. 12-9 ¶ 8. Lamb did not say anything and left the room shortly after.

After Lamb left the bedroom, S.S. got up, put on her shorts, and returned to bed. After a short period of time, Lamb reentered the bedroom again. Lamb got back into the bed with S.S. and asked why she had put her shorts back on. S.S. did not answer Lamb. Lamb asked S.S. to take off the shorts, and, when she did not comply, he took them off for her. S.S. testified that Lamb began touching her again and tried to "stick his penis inside [her] vagina area." *Id.* ¶ 9 (alteration in original). S.S. further testified that Lamb was "on top of" her and that she started to scream. *Id.* S.S. pushed Lamb, and he left the room. Before leaving, Lamb said "I'm still the same old grouchy Darnall."[1] *Id.* S.S. put her underwear in the corner of her closet and then went downstairs. She fell asleep in front of the television.

S.S. did not tell anyone of the incident that night. The next morning, Lamb drove S.S. and her brothers to their grandmother's house. Lamb dropped the siblings off and picked them up later that afternoon. S.S. had planned on telling her grandmother about the incident but decided against it because her grandmother had been sick.

On Monday, at school, S.S. told one of her friends about the incident. Another friend saw her crying and came over to help. S.S. told both of them what had happened. S.S.' friends took her to speak to a coach. Afterward, L.D. took her to the hospital.

Later that day, two police officers waited at Lamb's home for him to return from work. The officers took Lamb to the police station for questioning. Lamb was not under arrest at this time. The detectives read Lamb his *Miranda* warnings. Lamb acknowledged his rights and agreed to speak to the officers.

---

[1] Darnall is a nickname some kids call Lamb.

Lamb initially told the police officers that he remembered playing the card game, going to bed, and then waking up on the couch. He claimed not to remember anything in between the game and waking up. After about an hour, the officers told Lamb that S.S. made an allegation against him. Lamb informed the detectives that he did not see S.S. in that way, stating that "if it happened, it was an accident," and then "I didn't do it. I don't remember, but it's possible if she says it." *Id.* ¶ 21. He acknowledged that he had not known S.S. to be a liar. Lamb also said that his biggest fear was that he did it and now owed S.S. an apology. Lamb also provided a written statement along these lines. The following day, officers again interviewed Lamb, reading Lamb his *Miranda* rights and proceeding after Lamb agreed to speak with the officers. During this second interview, when asked if Lamb recalled entering S.S.' bed, Lamb responded, "I don't doubt that it probably happened." *Id.* ¶ 23.

The state charged Lamb in a five-count indictment, with Lamb proceeding to a jury trial on May 10, 2010, on three of the counts. S.S., L.D., one of S.S.' brothers, and two of S.S.' friends testified. Two of the officers who conducted the investigation also testified, as did two forensic scientists who tested a sexual assault evidence collection kit taken from S.S., and the nurse who collected that kit. The nurse noted she did not observe any trauma on S.S.' body but that such a finding was not unusual. Although chemical tests indicated the presence of semen on S.S.' underwear, no sperm or seminal fluid was found on any of the swabs taken for the evidence collection kit.

Lamb moved for a directed verdict at the conclusion of the state's case, which the trial court denied. After the defense rested without presenting evidence, the jury found Lamb guilty of one count of aggravated criminal sexual abuse and two counts of criminal sexual assault.

4

After the trial, on July 30, 2010, the trial court held a hearing regarding Lamb's *pro se* motion to suppress, which he filed before the trial began on August 27, 2009. Lamb moved to suppress the statements he made to the police, claiming that these statements were coerced. At a pre-trial hearing, the trial court informed Lamb that it was at the discretion of his attorney to file the motion to suppress and therefore did not rule on the motion. The trial court did not revisit the motion until the July 30, 2010, hearing at which the court found that even if the statements in the motion were true, Lamb did not suffer any prejudice.

The trial court sentenced Lamb to seven years in prison and an indefinite term of MSR.

## II. Direct Appeal

With the assistance of counsel, Lamb filed a direct appeal on October 13, 2011, raising evidentiary issues that occurred at trial, including the admission of testimony by a nurse that Lamb claimed was hearsay, and objecting to the imposition of an indefinite term of MSR. On March 28, 2012, the Illinois Appellate Court affirmed his conviction and sentence.

Lamb filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court on April 20, 2012. In his PLA, Lamb claimed that the appellate court erred in affirming the judgment of the trial court regarding the nurse's hearsay testimony. The Illinois Supreme Court denied the PLA on September 26, 2012.

## III. State Post-Conviction Proceedings

Lamb then filed a *pro se* post-conviction petition pursuant to 725 Ill. Comp. Stat. 5/122-1 on February 20, 2013. Lamb argued that (1) the police officers' continued questioning of him after he asked for an attorney violated his rights under the Sixth Amendment, (2) his trial attorney was ineffective in failing to file a motion to suppress his statements to the police, (3) the trial court's seating of a biased juror denied him his right to a fair trial under the Sixth

Amendment, and (4) the trial court erred in failing to conduct a hearing on his *pro se* motion to suppress his statements to the police. The trial court appointed post-conviction counsel for Lamb, but post-conviction counsel did not raise any additional claims outside of Lamb's original post-conviction petition. Subsequently, on September 22, 2014, Lamb filed a *pro se* amended post-conviction petition raising two additional claims challenging the sufficiency of the evidence presented at trial and the propriety of one detective's testimony before the grand jury. The state filed a motion to dismiss the petition for post-conviction relief, which the trial court granted on May 7, 2015.

Lamb then filed a post-conviction appeal. He argued that (1) the appellate court should remand for an evidentiary hearing on his post-conviction claim that his trial attorney was ineffective for failing to file a motion to suppress, and (2) the appellate court should remand for a new second-stage proceeding regarding post-conviction counsel's ineffective assistance in agreeing to the dismissal of his claims. On August 21, 2017, the Illinois Appellate Court found that Lamb had not made a substantial showing of ineffective assistance of trial or post-conviction counsel and affirmed the dismissal of his post-conviction petition.

Lamb filed a PLA with the Illinois Supreme Court on November 14, 2017. In his PLA, Banks argued that the appellate court erred in ruling that trial and post-conviction counsel rendered effective assistance of counsel. The Illinois Supreme Court denied the PLA on January 18, 2018. Lamb then timely filed his federal habeas petition on March 29, 2018.

## LEGAL STANDARD

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based

6

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407. The Court uses an objective standard to determine whether a state court's application of Supreme Court precedent is unreasonable. *Id.* at 409; *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011).

## ANALYSIS

Lamb presents the following claims in his petition: (1) ineffective assistance of trial counsel for failing to move to suppress Lamb's statements to the police; (2) ineffective assistance of post-conviction counsel; and (3) trial court error in imposing an indefinite MSR term that (a) contradicts the Illinois state sentencing guidelines and (b) violates the Double Jeopardy Clause of the Constitution. Respondent argues that Claim 1 does not have merit. Respondent further contends that Claim 2 and Claim 3(a) are not cognizable on federal habeas review. Finally, Respondent maintains that Lamb procedurally defaulted Claim 3(b) because he did not raise the issue in any state court proceedings.

### I. Ineffective Assistance of Trial Counsel (Claim 1)

To establish constitutionally ineffective assistance of counsel, Lamb must show (1) "that counsel's representation fell below an objective standard of reasonableness;" and (2) "that there

7

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In considering the first prong, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and may not let hindsight interfere with its review of counsel's decisions. *Id.* at 689. In regard to prejudice, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This means a "substantial," not just "conceivable," likelihood of a different outcome in the case. *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). The Court need not address both prongs of the *Strickland* test if one provides the answer. That is, if the Court determines that the alleged deficiency did not prejudice Lamb, it need not consider the first prong. *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014). In reviewing the Illinois Appellate Court's decision, the Court must apply a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (quoting *Cullen*, 564 U.S. at 188).

Lamb argues that he received ineffective assistance because his trial counsel did not file a motion to suppress the statements he made to the police after his arrest. Lamb maintains that counsel's decision to not file a motion to suppress was not based on strategy but instead on counsel's mistaken belief that a jury would believe the officers over him. Moreover, Lamb contends that his statement to police was a critical component of the state's case and so its admission unfairly prejudiced him. The Illinois Appellate Court rejected Lamb's claim, finding

that "there is no reasonable probability that the jury would have acquitted defendant even if trial counsel had successfully moved to suppress defendant's statements." Doc. 12-9 ¶ 53.

Initially, the Illinois Appellate Court's decision is not contrary to clearly established law, where the court correctly cited to *Strickland* as the governing standard. *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) ("A decision applying the correct legal rule to the facts of a case is not 'contrary to' within the meaning of § 2254(d)(1)."). Lamb also has not shown that the Illinois Appellate Court unreasonably applied federal law in denying his ineffective assistance of counsel claim in finding that he did not satisfy the prejudice prong of the *Strickland* test. The appellate court reached its conclusion by finding that even if the trial court had suppressed Lamb's statements to the police, the other evidence against him was "overwhelming and uncontradicted." *Id.* ¶ 54. In other words, "even if a motion to suppress had been successful, the case was not going away," with the state having "plenty of powerful evidence" against Lamb. *Avila v. Richardson*, 670 F. App'x 896, 898 (7th Cir. 2016). As the appellate court recounted, S.S. testified at trial that Lamb entered into her room three times, touched her on her vaginal area and, on the third time, tried to insert his penis inside of her. Her testimony regarding these facts remained relatively consistent throughout police questioning and testimony at trial. Lamb seizes on certain inconsistencies in S.S.' testimony and claims that without his statement, prior statements and reports would have undermined her trial testimony. But the appellate court found that the inconsistencies shown on cross-examination of S.S. were minor and did not discredit S.S. as a witness. The Illinois Appellate Court therefore concluded that Lamb had not proven that, but for the alleged errors of the trial counsel, a reasonable probability existed that the result of the trial would have been different. Given the volume of evidence and consistency of the testimony against Lamb, the Court finds that the Illinois Appellate Court did not unreasonably

9

apply *Strickland* to Lamb's claims of ineffective counsel regarding the decision to not suppress Lamb's statements to the police officers. *See Ebert v. Gaetz*, 610 F.3d 404, 415 (7th Cir. 2010) (finding that counsel was not ineffective for failing to file a motion to suppress because it was highly unlikely that the admission of a changed statement would result in a significant reweighing of the "totality of the circumstances"). Accordingly, the Court denies Lamb's claim for ineffective assistance of trial counsel based on the failure to file a motion to suppress.

## II. Ineffective Assistance of Post-Conviction Counsel (Claim 2)

The Court next turns to Lamb's second claim alleging ineffective assistance of post-conviction counsel. Respondent argues that Lamb's claim is not cognizable on federal habeas review. The power of federal habeas review is remedial and limited to the violation of a petitioner's federal rights. *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). A federal court may intervene only if the state court has erred and deprived the petitioner of a right under federal law. *Id.* States do not have an obligation to provide post-conviction relief or counsel to aid a defendant pursuing such relief. *See Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). Indeed, the habeas statute forecloses Lamb's claim concerning post-conviction counsel, stating that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Thus, the Court has no basis to consider Lamb's claim for ineffective assistance of post-conviction counsel on federal habeas review.

## III. Indefinite MSR Term (Claim 3)

Finally, the Court addresses Lamb's claim regarding the imposition of an indefinite period of MSR. Lamb argues that the trial court's imposition of an indefinite MSR term is inconsistent with state sentencing guidelines and violates the Double Jeopardy Clause of the Constitution.

First, the Court cannot address Lamb's claim that the imposition of an indefinite MSR term is inconsistent with state sentencing guidelines. As discussed in connection with his claim for ineffective assistance of post-conviction counsel, federal courts may not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Instead, "in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Lamb's contention that the trial court improperly applied state sentencing rules does not implicate federal law and so does not present a cognizable federal habeas claim. *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

Next, the Court finds that Lamb procedurally defaulted his claim regarding any violation of the Double Jeopardy Clause. A petitioner must fairly present his claims to all levels of the Illinois courts to avoid procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). To be "fairly presented," a petitioner must pursue his claim through one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this means appeals up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46; *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010). When a petitioner has failed to present his federal claim to the state courts and the opportunity to raise

11

that claim has subsequently passed, the petitioner has procedurally defaulted the claim and it is not available for federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

Lamb first raised his concern regarding double jeopardy in this petition, having failed to raise it in any proceeding before the state courts. He did argue on direct appeal that the appellate court should remand his case to the trial court for imposition of a definite MSR term, but he did not invoke any federal law basis for this argument. And Lamb did not even raise this more general MSR claim through one complete round of state court review, omitting it from his direct appeal PLA. Because Lamb did not raise the specific issue regarding his double jeopardy concern through one complete round of state court review before raising it in this habeas petition, he has procedurally defaulted this aspect of his claim. *Lewis*, 390 F.3d at 1025.

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Johnson v. Loftus*, 518 F.3d 453, 455-56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (citation omitted) (internal quotation marks omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent."

*Dellinger*, 301 F.3d at 767. This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

Lamb has not provided any basis for this Court to find cause or prejudice to excuse his procedural default nor has any new evidence come to light to suggest Lamb's actual innocence. Therefore, the Court need not consider this aspect of Lamb's claim. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). The requirement of a certificate of appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find this Court's rulings debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484–85, 120 S. Ct. 1595). Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies Lamb's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

Dated: October 11, 2019

_____
SARA L. ELLIS
United States District Judge